FEDERAL DEPOSIT INSURANCE
CORPORATION, in its
Corporate Capacity

v.

Charles E. BARHAM, et al.

Civ. A. No. 89–0776.

United States District Court,
W.D. Louisiana,
Monroe Division.

Dec. 12, 1991.

Barry W. Ashe, Cecilia C. Woodley, Stephen G. Bullock, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., Betty Jean George Ray, Shreveport, La., Marilyn E. Anderson, Washington, D.C., for plaintiff.

Charles W. Salley, Lunn, Irion, Johnson, Salley & Carlisle, Shreveport, La., for Charles C. Barham.

Charles C. Barham, pro se.

David L. Bussell, pro se.

David T. Caldwell, pro se.

Donald G. Kelly, Kelly & Salim, Natchitoches, La., for Roland Dobson.

James Charles McMichael, Jr., Robert Roberts, III, Blanchard, Walker, O'Quin & Roberts, Shreveport, La., for John J. McHale.

J. Samuel O'Donnell, III, pro se.

Robert Sharp, Jr., Sharp & McVea, Ruston, La., W. Craig Henry, James A. Rountree, Hudson, Potts & Bernstein, Monroe, La., for C.A. Reed, Jr.

F. Drake Lee, Jr., Herschel E. Richard, Jr., Dewey W. Corley, Cook, Yancey, King & Galloway, Shreveport, La., for Joe D. Waggonner, Jr.

Philip A. Franco, F.L. Butler, Adams & Reese, New Orleans, La., Duncan L. Clore, Michael Keeley, Jill Giroir, Strasburger & Price, Dallas, Tex., for Federal Ins. Co.

David T. Caldwell, pro se.

Barry W. Ashe, Cecilia C. Woodley, Stephen G. Bullock, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., Betty Jean George Ray, F.D.I.C., Shreveport, La., Marilyn E. Anderson, F.D.I.C., Washington, D.C., for F.D.I.C.

## RULING

LITTLE, District Judge.

Plaintiff Federal Deposit Insurance Corporation (FDIC) has brought suit against

the former officers and directors of the now defunct First National Bank of Ruston (FNBR).

On 10 April 1986, The Office of the Comptroller of the Currency (OCC) closed FNBR and appointed the Federal Deposit Insurance Corporation (FDIC) as the bank's receiver. Exactly three years later, the FDIC brought this suit, accusing defendants Dobson, Reed, McHale, Sharp, Waggonner and four others of breaches of fiduciary duty and breaches of contract resulting from improper management and lending practices. Defendants thereafter filed a third-party claim against Federal Insurance Company (Federal), alleging that FNBR's liability policy with Federal in effect from September 1981 through September 1984 should cover any damages awarded to FDIC in this action.

We consider (1) defendants' motions to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted; (2) defendants Sharp and Reed's motion for summary judgment; (3) defendants' motion for summary judgment on the issue of insurance coverage; (4) third-party defendant Federal Insurance Company's motion for summary judgment.

## I. DEFENDANTS' MOTIONS TO DISMISS COMPLAINT

Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted have been filed by defendants Reed, Sharp, Waggonner, McHale, Barham, Dobson, and Caldwell. Because the arguments in these motions are essentially the same, we will consider them together.

The court will not grant Rule 12(b)(6) motions to dismiss unless it is shown beyond a doubt "that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Furthermore, a case should not be dismissed unless an affirmative defense or other bar to relief appears on the face of the complaint. *See Garrett v. Commonwealth Mortgage Corp. of America,* 938 F.2d 591, 599 (5th Cir.1991).

Additionally, the court must accept "all well pleaded averments as true and view them in the light most favorable to the plaintiff." *Montgomery v. United States,* 933 F.2d 348 (5th Cir.1991) (*quoting Rankin v. City of Wichita Falls,* 762 F.2d 444 (5th Cir.1985)).

In their motions to dismiss, defendants argue that under Section 212(k) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) (12 U.S.C. § 1821(k)) they may be held liable only for acts of administration amounting to more than simple fault. Section 1821(k) creates a federal liability standard for officers and directors of federally insured depository institutions. It provides:

A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation—

(1) acting as conservator or receiver of such institution,

(2) acting based upon a suit, claim, or cause of action purchased from assigned by or otherwise conveyed by such receiver or conservator, or

(3) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed in whole or in part by an insured depository institution or its affiliate in connection with assistance provided under section 1823 of this title,

for gross negligence including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

The federal liability standard created by § 1821(k), by its express terms, requires a showing of either gross negligence or greater violations of duty. Thus, § 1821(k)

plainly preempts any state law that would prohibit the FDIC from suing officers and directors for gross negligence or conduct more negligent than gross negligence.

■ Defendants argue that § 1821(k) also preempts state causes of action that would allow the FDIC to sue officers and directors for other forms of negligence. They contend that § 1821(k) establishes a uniform national standard under which officers and directors may *only* be held liable for "gross negligence." Because FDIC has failed to specify a claim of "gross negligence" in its complaint, defendants argue, the complaint must be dismissed for failure to state a claim upon which relief may be granted.

The plain language doctrine controls our interpretation of a statute. *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). The concluding sentence of § 1821(k) states that nothing in the statute "shall impair or affect any right of the [FDIC] under other applicable law." We interpret this sentence to mean what it says—that the FDIC is not barred from proceeding under other applicable laws. There is nothing in § 1821(k) that precludes claims for breach of a lesser standard of care than gross negligence.[1] We assume that if Congress had intended to preempt the application of state law they would have so stated. Instead, the statute declares expressly that it must not be read to limit the FDIC's rights under "other applicable law."

■ We hold that FDIC's failure to use the magic words "gross negligence" in its complaint is not fatal to its suit; indeed, the FDIC has stated a claim under "other applicable law." Defendants motions to dismiss do not require us to explicate other standards of care applicable to FDIC's complaint (under Louisiana law). We need only ask whether FIRREA preempts the FDIC from suing defendants for other forms of negligence besides "gross negligence." Because we find that the FDIC is not barred by 12 U.S.C. § 1821(k) from proceeding under a lesser standard of fault than gross negligence, we must deny defendants' motions to dismiss.

## II. SHARP AND REED'S MOTION FOR SUMMARY JUDGMENT

■ Defendants Reed and Sharp have also filed a motion for summary judgment on the claims brought against them by the FDIC. We will deny this motion.

Reed and Sharp attempt to distinguish their roles as officers and directors of FNBR from the other defendants in this case. They claim that they cannot be liable because they played a lesser part in the approval of certain loans and had no notice of the process employed by the bank staff in suggesting board approval for certain loans. Reed and Sharp also argue that none of their activities can be defined as "gross negligence" under Louisiana law, which they maintain is the applicable negligence standard in this case.

After reviewing their motion for summary judgment and the supporting documents, we conclude that Reed and Sharp have failed to show that there are no genuine issues of material fact to be decided at trial. The fact intensive arguments contained in this motion—which attempt to differentiate Reed and Sharp's responsibilities for particular loans from those of the other defendants—are more appropriately decided at trial.[2] A complete development

---

**1.** We note that district courts have split on interpreting this statute. *See Federal Deposit Insurance Corp. v. Isham*, 777 F.Supp. 828 (D.C.Colo. 1991); *Federal Deposit Insurance Corp. v. McSweeney*, 772 F.Supp. 1154 (S.D.Cal.1991); *but see Federal Deposit Insurance Corp. v. Swager*, 773 F.Supp. 1244 (D.C.Minn.1991); *FDIC v. Canfield*, 763 F.Supp. 533 (D.C.Utah 1991).

Our reading of section 1821(k) is consistent with a recent ruling of another court in this district. In *FDIC v. Mijalis*, No. 89–1316, 1992 WL 172677 memorandum ruling Nov. 1, 1991

(W.D.La.), Judge Stagg stated that "§ 1821(K) establishes the *federal* standard of liability for directors and officers of federally insured depository institutions in this case. As Congress has spoken in this area, there is no need to fashion federal common law to determine the standard." Order & Reasons at 3.

**2.** Summary judgment is often not appropriate in negligence cases in which the court is called upon to distinguish the reasonableness of the acts and conduct of numerous parties. *Gross v.*

of the facts surrounding the involvement of all of the defendants is necessary [3] before a decision can be made on Reed and Sharp's acts and conduct. We therefore deny the motion for summary judgment.

██ We note, however, that the pleadings reveal some confusion regarding the applicable standards of law. Both parties argue that this court must apply federal common law to this case because it involves directors and officers of a national bank. These arguments ignore the clear applicability of FIRREA's § 1812(k). In enacting § 1812(k), Congress created a federal statutory standard applicable to officers and directors of national banks. Any federal common law in existence previous to the enactment of FIRREA would be superseded by the statute: "[w]hen Congress has legislated on the subject, the legislation and not federal common law, will be deferred to." *Wayne v. Tennessee Valley Authority*, 730 F.2d 392 (5th Cir.1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 908, 83 L.Ed.2d 922 (1991). Accordingly, this court will apply § 1812(k) as the federal standard of liability, and will disregard any previously applicable federal common law.

Where it is applicable, this court must also apply Louisiana law. As discussed above, while § 1812(k) requires that the FDIC show "gross negligence" to establish breach of duty of care, the statute does not bar the FDIC from proceeding under "other applicable law." We determined that the FDIC may pursue officers and directors under applicable state law for breaches of a lesser standard of care than "gross negligence." Thus, to the extent it does not conflict with § 1812(k)'s "gross negligence" (and greater negligence) stan-

dard, we will apply Louisiana law to the actions of the defendants in this case.

## III. MOTIONS FOR SUMMARY JUDGMENT BY DEFENDANTS AND FEDERAL

██ The defendants and Federal have filed motions for summary judgment on the issue of insurance coverage. Defendants believe that the Federal policy covers any liability for the wrongful acts alleged by the FDIC. Federal argues that coverage for the acts alleged by the FDIC is excluded, and that, in any event, there can be no coverage because a claim was not reported within the notice framework required by the policy. The parties agree that Federal issued to FNBR an Executive Liability and Indemnification Policy (Policy) that was effective from 16 September 1981 to 16 September 1984, with a ninety day extended claim reporting period. This court must determine whether, based on the documents before us, the Policy covers the allegations of wrongful acts made by the FDIC.

Federal's directors and officers liability policy (D & O policy) insured FNBR for "wrongful acts" [4] that were reported to Federal within the policy period or the extended reporting period. Section 1.1 of the Policy states:

> The Company shall pay on behalf of each of the Insured Persons all Loss for which such Insured Person is not indemnified by the Insured Organization, and which such Insured Person becomes legally obligated to pay on account of any claim(s) made against him, individually or otherwise, during or after the policy period for a Wrongful Act:

*Southern Railway Company* 414 F.2d 292, 296 (5th Cir.1969); *Croley v. Matson Navigation Company*, 434 F.2d 73, 75 (5th Cir.1970).

**3.** *See Palmer v. Chamberlin*, 191 F.2d 532 (5th Cir.1951):

> "Where ... the decision of a question of law by the Court depends upon an inquiry into the surrounding facts and circumstances, the Court should refuse to grant a motion for a summary judgment until the facts and circumstances have been sufficiently developed

> to enable the Court to be reasonably certain that it is making a correct determination of the question of law." *Id.* at 540.

**4.** Wrongful act is defined in the policy as:

> "any error, misstatement or misleading statement, or act or omission, or neglect or breach of duty committed, attempted or allegedly committed or attempted by an Insured Person, individually or otherwise, in the discharge of his duties to the Insured Organization...."

(A) committed attempted or allegedly committed or attempted by such Insured Person(s) before or during the Policy Period and

(B) reported to the Company, in accordance with Section 4, during the Policy Period or, if exercised, the Extended Reporting Period.

Section 4.1 of the policy provides:

A specific. Wrongful Act shall be considered to have been first reported to the Company

(A) at the time that any Insured first gives written notice to the Company that a claim has been made against any Insured Person(s)

. . . .

(B) at the time that any Insured first gives written notice to the Company (1) of the material facts or circumstances relating to such Wrongful Act as facts or circumstances having the potential of giving rise to a claim being made against any Insured Person(s) or (2) of the receipt of written or oral notice from any party that it is the intention of such party to hold any Insured Person(s) responsible for such Wrongful Act;

whichever occurs first.

Section 4.2 provides:

[A]s a condition precedent to their rights under this policy, [insureds must] give to the Company written notice as soon as practicable of any claim made against any of them for a Wrongful Act and give the Company such information and cooperation as it may reasonably require.

Hence, the Policy provides coverage for wrongful acts only if notice of a claim or a potential claim is actually reported to Federal, either written or orally, during the policy period (from 16 September 1981 to 16 December 1984).[5] And, as a condition

precedent to recovery, any such notice of a claim must be given "as soon as practicable."

Defendants argue that Federal was given notice of the wrongful acts during the policy period, and that such notice triggers the coverage provisions regardless of whether a claim was reported during the policy period. Specifically, defendants contend that notice of the FDIC allegations was given when an investigator from Brown Risk Management Organization, Inc., (Brown) became aware that government regulators had identified at least two banking violations in FNBR loan participation. Additionally, defendants argue that the policy covers their claims because, although they were reported after the Policy expired, they were reported "as soon as practicable."

Federal, on the other hand, contends that there is no coverage because it was not notified during the policy period that a claim had been or would be made against its insured for wrongful conduct.[6] In any case, Federal argues, such notice was not given "as soon as practicable."

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(C). The moving party must establish the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In reviewing a motion for summary judgment, we view the documents in the light most favorable to the non-moving party.

■ The Federal D & O Policy is a

---

5. The policy also contains some specific exclusions, which may be relevant to defendants claims. Endorsement No. 2 in the Policy excludes coverage for losses involving "classified and/or past due" loans. Endorsement No. 1 in the Policy excludes coverage for loans transacted with "insiders." Federal argues that the bad

loans which form the basis of the FDIC action are excluded from coverage by these endorsements. However, because we find that Federal was not given adequate notice of these claims, we will not consider these exclusion arguments.

6. Federal claims ignorance of any impending action against its insured until mid–1990.

"claims made" policy,[7] which requires that a claim be either made or discovered during the time frame of the policy for liability to be assumed by the insurer. Louisiana courts have determined that "claims made" policies are neither ambiguous, unconscionable, nor violative of public policy. *Hunter v. Office of Health Services & Environmental Quality Dept of Health & Human Resources*, 385 So.2d 928 (La.Ct.App.2d Cir.1980); *Breaux v. St. Paul Fire and Marine Insurance Co.*, 326 So.2d 891 (La. Ct.App.3d Cir.1976); *Livingston Parish School Board v. Fireman's Fund American Insurance*, 282 So.2d 478 (La.1973).

■ Under Federal's claims made policy, if notice of a claim for wrongful acts covered by the Policy was given to (or discovered by) Federal between 16 September 1981 until 16 December 1984, defendants would be entitled to coverage under the policy. It is undisputed that the defendants did not file a formal claim with Federal until mid–1990. Nor did defendants notify Federal of potential claims by the FDIC during the policy period. More importantly, the FDIC did not reveal its intent to allege wrongful acts until mid–1989, at the earliest.

We find that Federal was not given adequate notice of a claim as required by the Policy, and that, as a matter of Louisiana law, defendants claims are not covered by the Federal policy. Although the policy itself does not define the term "claim," the intent of the "claims made" notice provision is clear. An insurance policy is a contract in Louisiana, and the term "claim" will be "understood in the common and usual signification, without attending so much to grammatical rules as the general and popular use." *Harmon v. Lumbermens Mutual Casualty Company*, 247 La. 263, 170 So.2d 646, 651 (1965); La.Civ.Code 2046.

In our view, a "claim" on the insurance company for the wrongful acts of its insured cannot have been made until the FDIC revealed its intent to sue the defendants for the wrongful acts that form the basis for the insurance claim.[8]

The Fifth Circuit has stated:

[A]lthough the given set of facts will determine on a case-by-case basis when a "claim" is "made" for the purposes of a D & O policy, a claim is indisputably made by an outside party filing suit on a demand, resulting from an act of the officer or director, which demand the bank has denied.

*MGIC Indemnity Corp. v. Central Bank of Monroe, Louisiana*, 838 F.2d 1382, 1384 (5th Cir.1988). Under the facts in this case, Federal cannot have received notice of a claim until, at the earliest, the directors and officers received a written demand from the FDIC's attorney's, or, more likely, when the FDIC served the defendants with the complaint.[9] In either case, Federal did not receive notice of a claim until more than three years after the policy expired.

■ Furthermore, we find that no showing of "actual prejudice" is necessary here. Although under "occurrence"[10] policies courts have required the insurer to show actual prejudice to avoid coverage for late notice, Louisiana courts have *not* established that actual prejudice is required

---

7. The following statement appears on the declarations page of the Policy:

THIS IS A CLAIMS MADE POLICY. Except as otherwise provided herein, this policy covers only Wrongful Acts reported to the Company during the Policy Period. Please read carefully.

8. Federal maintains that it was first informed of the FDIC action by letter dated 12 June 1990.

9. The FDIC did not take any direct action against the defendants until the filing of the lawsuit. Moreover, all defendants, except Reed and Sharp, have testified that they did not become aware of the FDIC's intention to bring suit

against them until shortly before the action was filed. Reed did not testify on the matter. Sharp has testified that although he was aware of the FDIC's intention to hold him responsible for bank losses after a 1986 meeting, he did not know of the FDIC's intent to sue the officers and directors of FNBR until shortly before the suit was filed. Sharp deposition at 9–10.

10. The "occurrence" policy is the most commonly used in Louisiana; for liability to be triggered under an occurrence policy, the injury or damage must occur during the policy period. *See Hunter v. Office of Health Services*, 385 So.2d 928 (La.Ct.App.2d Cir.1980), *writ refused*, 398 So.2d 737 (1980).

to avoid coverage on a "claims made" policy. *Driskill v. El Jamie Marine, Inc.,* No. 87–4136, 1988 WL 93606 (E.D.La.1988). To require Federal to show actual prejudice here would be inconsistent with the holding of the Fifth Circuit in *MGIC Indemnity Corp. v. Central Bank of Monroe, Louisiana,* 838 F.2d 1382 (5th Cir.1988). Applying Louisiana law, the *MGIC* court held that the insured's failure to give notice of a claim when required to do so as a condition precedent to coverage, regardless of whether the insurer shows actual prejudice, may bar recovery for such claims. *Id.* The court stated our position succinctly:

> We hold that the language stating that compliance with this provision is a condition precedent to recovery under the policy means exactly what it says, and that if [insured] failed to comply with this provision by not giving MGIC timely notice of the claim, then the claim will not be covered under the policy....

*Id.* at 1387. As in *MGIC,* the cases cited by defendants requiring the insurer to show actual prejudice are grounded in equity, "and the courts have taken special consideration of the fact that the policy holders were consumers unlikely to be conversant with all the fine print of their policies." *Id.* at 1387. Such is not the case with this D & O policy.

■ We also reject defendants argument that they were only required to give notice "as soon as practicable." The "as soon as practicable" clause in § 4.2 is not ambiguous, nor does it conflict with the "claims made" notice provisions in § 4.1. The clause acts as an underlying requirement that any notice of claim be timely; it does not act as an indefinite extension of the notice of claims provisions. Defendants interpretation of this language—that it allows the making of *any* claims after the policy period if such claims are made "as soon as practicable"—would render the carefully worded notice requirements moot and would produce absurd consequences. Even when read in the light most favorable to the insured, and construing any ambiguity against the insurer, the "as soon as practicable" clause cannot be interpreted to extend the coverage of a "claims made" D & O policy more than three years into the future.

Accordingly, (1) defendants' motions to dismiss plaintiff's complaint are DENIED; (2) defendants Sharp and Reed's motion for summary judgment is DENIED; (3) defendants' motion for summary judgment on the issue of insurance coverage is DENIED; (4) third-party defendant Federal Insurance Company's motion for summary judgment is GRANTED. Counsel for Federal will prepare and submit an appropriate judgment.