## RESOLUTION TRUST CORPORATION, Plaintiff–Appellant,

v.

**Francis X. GALLAGHER, Vincent J. Gavin, John J. Gill, John W. Gilluly, Gordon A. Groebe, Joseph M. Heidecker, Lawrence Klingler, Louis J. Kole, Gary K. Kummer, Matthew J. Lamb, H. Richard Landis, Edward A. Long, and Milton Meyers, Defendants–Appellees.**

No. 92–4023.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1993.

Decided Nov. 9, 1993.

Rehearing and Rehearing En Banc Denied Dec. 8, 1993.

**417**

Raymond H. Groble, III, Sean M. Sullivan, Ross & Hardies, Chicago, IL, for Francis X. Gallagher.

Gordon B. Nash, Jr., Gardner, Carton & Douglas, Chicago, IL, for Vincent J. Gavin.

Edmund P. Burke, Thomas M. Lake, Burke & Burke, Ltd., Chicago, IL, for John J. Gill.

George W. Groble, Donald G. Groble, Daniel F. Marren, Kimberly M. Kash, Groble & Groble, Chicago, IL, for John W. Gilluly.

Michael D. Walsh, Lawrence Schindler, Gierach, Schussler & Walsh, Ltd., Oak Lawn, IL, for Gordon A. Groebe.

Royal B. Martin, Jr., Daniel T. Hartnett, Martin, Brown, Sullivan & Bowman, Locke E. Bowman, III, University of Chicago Law School, Chicago, IL, for Joseph M. Heidecker.

Susan Bogart, Sulzer & Shopiro, Chicago, IL, for Lawrence Klinger.

Edward P. Freud, Dean J. McElroy, William B. Weidenaar, Ruff, Weidenaar & Reidy, Chicago, IL, for Louis J. Kole.

Donald L. Mrozek, Peter D. Sullivan, John J. Foran, Hinshaw & Culbertson, Chicago, IL, Daniel M. Purdom, Hinshaw & Culbertson, Lisle, IL, for Gary K. Kummer.

Michael J. O'Rourke, Bruce R. Braun (argued), Robert W. Tarun, Winston & Strawn, Chicago, IL, for Matthew J. Lamb and H. Richard Landis.

George P. Lynch, Downers Grove, IL, for Edward A. Long and Milton Meyers.

Stuart J. Baskin, Joseph F. Haggerty, William F. Ranieri, James R. Warnot, Jr., Shearman & Sterling, New York City, for amicus curiae, American Bankers Ass'n, Ass'n of Bank Holding Companies, and Independent Bankers Ass'n of America.

Stephen Novack (argued), Timothy J. Miller, Novack & Macey, Alan F. Curley, Fay Clayton, Steven A. Ramirez, Robinson, Curley & Clayton, Chicago, IL, for Resolution Trust Corp.

Before BAUER, CUDAHY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

In 1990, the Resolution Trust Corporation ("RTC")[1] placed the Concordia Federal Bank for Savings ("Concordia"), a federally chartered and federally insured thrift into receivership. On February 14, 1991, the RTC filed this action against the former directors and officers of Concordia. The complaint sought to recover losses for the defendants' alleged negligence, breach of fiduciary duty, gross negligence, and breach of contract. The RTC alleged that the defendants' conduct caused Concordia to incur substantial losses which resulted in Concordia's failure.

The defendants filed motions to dismiss for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6). The defendants argued, *inter alia,* that the RTC may only assert claims against the defendants based on gross negligence or other similar conduct because 12 U.S.C. § 1821(k) establishes a national gross negligence standard of liability for officers and directors of federally insured financial institutions. The RTC claimed that § 1821(k)'s gross negligence standard does not pre-empt state law or federal common law actions based on a simple negligence standard of liability.

The district court found that § 1821(k) "pre-empted all previously existing federal common law, and created a federal cause of action solely for gross negligence." However, the district court found that § 1821(k) did not pre-empt either state statutory or common law. Even so, the district court held that no state law claims could be successfully prosecuted against the defendants because Concordia was a federally chartered, federally regulated, and federally insured thrift organized under federal law. Accordingly, the district court dismissed the negligence, breach of fiduciary duty, and breach of contract claims, "since the conduct they allege falls below the minimum level of culpability

established by Congress in § 1821(k)." 800 F.Supp. 595.

Following dismissal of the RTC's claims, the district court granted the RTC's petition, pursuant to 28 U.S.C. § 1292(b), to certify for interlocutory review the issue of whether § 1821(k) "pre-empted federal common law and created a cause of action solely for gross negligence." On November 30, 1992, this court granted the RTC permission to take this interlocutory appeal.

*Standard of Review*

■ In cases of statutory construction, like this one, we review the findings of the district court *de novo. Oviawe v. INS,* 853 F.2d 1428, 1431 (7th Cir.1988).

*Discussion*

■ The only issue raised in this appeal is whether § 1821(k) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA")[2] pre-empts federal common law and establishes a gross negligence standard of liability for officers and directors of failed federally chartered financial institutions. Section 1821(k) provides in pertinent part:

> A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation ... for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

This is a case of first impression in this circuit. No other circuit courts have directly addressed this issue either.[3] However, the

---

1. Please note that many of the statutory and case references in this opinion refer to the RTC and the FDIC interchangeably.

2. FIRREA was enacted to help stabilize the savings and loan industry which suffered huge losses in the years proceeding 1989 and to provide a mechanism for the federal government to recoup

losses of federally insured deposits. H.R.Conf. Rep. No. 222, 101st Cong., 1st Sess. 411 (1989), *reprinted in* 1989 U.S.C.C.A.N. 432, 450.

3. Two circuit courts have considered the related issue of whether § 1821(k) pre-empts state law. Both courts have determined that it does. *See FDIC v. Canfield,* 967 F.2d 443 (10th Cir.) (*en*

majority of district courts have agreed with the appellees that § 1821(k) pre-empts federal common law. *See FDIC v. Miller*, 781 F.Supp. 1271 (N.D.Ill.1991); *FDIC v. Barham*, 794 F.Supp. 187 (W.D.La.1991); *FDIC v. Brown*, 812 F.Supp. 722 (S.D.Tex.1992); *RTC v. Miramon*, 1992 WL 373635, 1992 U.S. Dist. LEXIS 18813 (E.D.La.1992); *RTC v. Chapman*, No. 92–3188, slip op. (C.D.Ill. Oct. 16, 1992); *FDIC v. Mintz*, 816 F.Supp. 1541 (S.D.Fla.1993); *RTC v. Farmer*, 823 F.Supp. 302 (E.D.Pa.1993); *FDIC v. Gonzalez–Gorrondona*, 833 F.Supp. 1545 (S.D.Fla. 1993); *RTC v. Hecht*, 818 F.Supp. 894 (D.Md. 1992); *FDIC v. G. Del Bates*, 838 F.Supp. 1216 (N.D.Ohio 1993). *Contra RTC v. Hess*, 820 F.Supp. 1359 (D.Utah 1993); *RTC v. Kidd*, No. 93–CV–0059–J, slip op. (D.Wyo. April 16, 1993).

Initially, it is important to note the limited role federal common law plays in areas where Congress has legislated. Federal common law is a creature of the federal judiciary and applies only in those "few and restricted" situations, *Wheeldin v. Wheeler*, 373 U.S. 647, 651, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963), "[w]hen Congress has not spoken to a particular issue" and "there exists 'a significant conflict between some federal policy or interest and the use of state law.'" *Milwaukee v. Illinois*, 451 U.S. 304, 313, 101 S.Ct. 1784, 1790, 68 L.Ed.2d 114 (1981) (*Milwaukee II*) (quoting *Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966)). The federal courts have "always recognized that the federal common law is 'subject to the paramount authority of Congress.'" *Id.* (quoting *New Jersey v. New York*, 283 U.S. 336, 348, 51 S.Ct. 478, 481, 75 L.Ed. 1104 (1931)), and is resorted to only "in absence of an applicable Act of Congress." *Id.* (quoting *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943)). "Federal common law is a 'necessary expedient' and when Congress address-

es a question previously governed by a decision rested on federal common law the need for such an unusual exercise by federal courts disappear." *Id.* (quoting *Committee for Consideration of Jones Falls Sewage Sys. v. Train*, 539 F.2d 1006, 1008 (4th Cir.1976) (*en banc*)).

In determining whether Congressional legislation preempts federal common law, " 'we start with the assumption that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law.' " *Id.* 451 U.S. at 317, 101 S.Ct. at 1792. The relevant question is whether Congress "spoke directly to a question," "not whether Congress ha[s] affirmatively proscribed the use of federal common law." *Id.* at 315, 101 S.Ct. at 1791. However, there is a "longstanding ... principle that statutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident. In such cases, Congress does not write upon a clean slate. In order to abrogate a common law principle, the statute must 'speak directly' to the question addressed by the common law." *United States v. Texas*, — U.S. —, —, 113 S.Ct. 1631, 1634, 123 L.Ed.2d 245 (1993) (citations omitted). This "longstanding principle" applies with equal force to well established federal common law practices. *Id.*

Accordingly, we must decide whether Congress "spoke directly" to the issue of what standard of liability governs suits brought by the RTC against officers and directors of failed federally chartered financial institutions. We find that it did.

### *Plain Language of § 1821(k)*

"The starting point for the interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative

banc ), cert. denied, — U.S. —, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992); *FDIC v. McSweeney*, 976 F.2d 532, 536–541 (9th Cir.1992), cert. denied, — U.S. —, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993). Despite the RTC's assertions, *McSweeney* does not conflict with the district court's decision. In *McSweeney*, the court stated:

We hold that plain language of FIRREA allows the FDIC to bring claims ... premised on a lesser degree of culpability than gross negligence, where authorized under *state law*. *McSweeney*, 976 F.2d at 541 (emphasis added). Thus, any reference in that opinion indicating that § 1821(k) does not pre-empt federal common law is mere dicta.

intention to the contrary, that language must ordinarily be regarded as conclusive.'" *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). The plain language of § 1821(k) "speaks directly" to the issue presented in this case and establishes a gross negligence standard of liability for officers and directors of failed financial institutions. That section provides: "[a] director or officer ... may be held personally liable for monetary damages ... for *gross negligence,* including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct...." (emphasis added). It is hard to imagine a more definitive statement by Congress that a gross negligence standard of liability applies to cases brought by the RTC against officers and directors of failed financial institutions. Consequently, federal common law, which may or may not allow an officer or director to be held liable for less culpable conduct than gross negligence, must yield to Congress' clear statement that a gross negligence standard of liability applies.[4]

The RTC raises a number of arguments in support of its position that § 1821(k) does not "speak directly" to the question at hand. First, the RTC argues that because § 1821(k) states that a officer or director "may" be held liable for gross negligence or intentional torts instead of "may only," that Congress did not intend to displace the federal common standard of liability. Essentially, the RTC contends that if Congress had intended gross negligence to be the exclusive standard under this section, then it would have stated that an officer or director "may only" be held liable for gross negligence. *See RTC v. Lightfoot,* 938 F.2d 65, 66–67 (7th Cir.1991) (finding that the word "may" as used in FIRREA's removal statute does not mean "may only").

We reject the RTC's reading of § 1821(k). "Read in context, the word 'may' refers to the right of the [RTC] to bring an action under this section. 'May' cannot reasonably be read to qualify the gross negligence liability standard and is therefore irrelevant to the substance of the provision." *FDIC v. Canfield,* 967 F.2d 443, 450 n. 4 (10th Cir.1992) (*Borby, J.,* dissenting).

Next, the RTC argues that the "savings clause" contained in § 1821(k) specifically preserves actions under federal common law. The "savings clause" states: "Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law." The RTC contends that the phrase "applicable law" includes federal common law.

"It is a cardinal principle of statutory construction that the more specific controls over the general." *Central Commercial Co. v. Commissioner,* 337 F.2d 387, 389 (7th Cir. 1964). Were we to accept the RTC's position, the general language of the "savings clause" would be permitted to swallow-up the specific language establishing a gross negligence standard of liability. Reading the "savings clause" as preserving a federal common law standard of liability for less culpable conduct than gross negligence would render the substantive portion of § 1821(k) surplusage. This would violate another "'elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.'" *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) (quoting *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979)). It is illogical that Congress intended in one sentence to establish a gross negligence standard of liability and in the next sentence to eviscerate that standard by allowing actions under federal common law for simple negligence.

A better reading of the savings clause is that it was drafted to preserve the RTC's ability to take other regulatory actions based on simple negligence. For example, it preserves the RTC's power to remove directors

---

4. We do not reach the issue of whether officers and directors may be held liable for simple negligence under federal common law. That issue was not certified by the district court and thus is not part of this interlocutory appeal.

for simple negligence and its power to issue "cease and desist" orders in cases of simple negligence. *See* 12 U.S.C. § 1818(b)–(g). As one commentator noted in reviewing FIRREA:

> FIRREA's savings clause is an important addition to the law, in light of FIRREA's statutory elimination of simple and ordinary negligence as a cause of action against bank and thrift directors. Without the savings clause, FIRREA could have been interpreted to withdraw from the FDIC other powers that the Agency had earlier wielded. [Section 1821(k)] was targeted exclusively at establishing a new uniform threshold in civil suits when the regulators seek monetary damages for depository institution mismanagement. Therefore, the savings clause was drafted to preserve those other FDIC regulatory powers whose exercise is mandated even in cases of simple negligence.... As a result, while [§ 1821(k)] impairs the FDIC's authority to prosecute directors for simple negligence in civil suits for monetary damages, it will not "impart or affect any right of the [FDIC] that exists under other applicable law." That is the savings clause's plain meaning.

David B. Fischer, Comment, *Bank Director Liability Under FIRREA: A New Defense for Directors and Officers of Insolvent Depository Institutions—Or a Tighter Noose?*, 39 UCLA L.Rev. 1703, 1771 (1992).

### Legislative History

■ Despite the RTC's assertions, there is "no clearly expressed legislative intention" contrary to our interpretation of the plain language of § 1821(k). We must first examine the Conference Report because it is the most persuasive evidence of congressional intent besides the statute itself. *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 537 (7th Cir.1991); *Demby v. Schweiker*, 671 F.2d 507, 510 (D.C.Cir.1981) ("Because the conference report represents the final statement of terms agreed to by both houses, next to the statute itself it is the most persuasive evidence of congressional intent."). That report states:

> [Section 1821(k)] preempts State law with respect to claims brought by the FDIC in any capacity against officers or directors of an insured depository institution. The preemption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including intentional tortious conduct.

H.R.Conf.Rep. No. 222, 101st Cong., 1st Sess. 393, 398 (1989), *reprinted in* 1989 U.S.C.C.A.N. 432, 437. Thus, the Conference Report shows that Congress intended for officers and directors to be held liable "for gross negligence or any conduct that demonstrates a greater disregard of a duty of care," not simple negligence.

■ The RTC relies heavily on the Senate Report in arguing that § 1821(k) does not pre-empt federal common law. That report provides:

> [Section 1821(k)] enables the FDIC to pursue claims against directors or officers of insured financial institutions for gross negligence (or negligent conduct that demonstrates a greater disregard of a duty of care than gross negligence) or for intentional tortious conduct. This right supersedes State law limitation that, if applicable, would bar or impede such claims. This subsection does not prevent the FDIC from pursuing claims under State law or under other applicable Federal Law, if such law permits the officers or directors of a financial institution to be sued (1) for violating a lower standard of care, such as simple negligence, or (2) on an alternative theory such as breach of contract [or] breach of fiduciary duty....

S.Rep. No. 19, 101st Cong., 1st Sess., 135 Cong.Rec. S6907, 6912 (daily ed. June 19, 1989). The Senate Report, however, was not available when the Senate initially voted on FIRREA. Because the period of time between introduction and passage of the bill was so short, the Senate report was not published until two months after the Senate initially voted. *Id.* at S6934 (Statement of Senator Garn). Consequently, it is not entitled to substantial weight. *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 407, 107 S.Ct. 750, 761, 93 L.Ed.2d 757 (1987) (giving little

weight to a statement made by the sponsor of a law placed into the Congressional record ten days after the law passed).

Several statements made by key Senators during the debate on FIRREA also support our interpretation of the plain meaning of § 1821(k). Furthermore, they are more authoritative evidence of the Senate's intent than is a report that was not even available when the Senate voted.

The Senate version of the officer and director liability section of FIRREA, as reported by the Banking Committee, would have allowed the RTC to bring claims "for any cause of action available at common law, including but not limited to, negligence, gross negligence, willful misconduct, breach of fiduciary duty...." S774, § 214(n), 101st Cong., 1st Sess. at 105–106 (calendar N. 45, April 13, 1989). During the debate, Senator Heflin raised concerns over this provision and suggested that it be "changed to ensure that financial institutions are able to attract strong and capable individuals as directors and officers." 135 Cong.Rec. S4264 (daily ed. April 19, 1989). Specifically, Senator Heflin suggested that an "intentional[ ] or willful[ ]" standard be adopted to govern officer and director liability. *Id.* Senator Riegle, one of the bill's managers, responded to Senator Heflin's suggestion as follows:

> I think the Senator makes some very important points here, and they are ones that we also had a concern about.... [W]e have tried with those standards—including one being willful, knowing violation and one being grossly negligent—to set a clearer standard, an important set of standards to impose some discipline in what the Senator has expressed some concern about.[5]

*Id.* at S4265. The remarks of Senators Heflin and Riegle indicate that Congress was aware that the proposed simple negligence standard might make it difficult for financial institutions to attract high quality officers and directors. In response, the managers' amendment removed any reference to simple negligence from the bill.[6]

Senator Sanford, a member of the Senate Banking Committee, commented on his understanding of the managers' amendment:

> I would like to thank the distinguished managers of the bill ... for including in the manager's amendment ... provisions relating to State laws affecting the liability of officers and directors of financial institutions.... I believe that these changes are essential if we are to attract qualified officers and directors to serve in our financial institutions. The bill as drafted would have preempted numerous State laws which provided limited indemnification for directors and officers. These State laws were enacted largely in response to problems faced by corporations in attracting good officers and directors.... The amendment which the managers have accepted modifies the bill to preempt State law only in a very limited capacity. The amendment would permit the FDIC to

---

**5.** *But see* Statement of Senator Riegle subsequently explaining the managers' amendment.

In recent years, many States have enacted legislation that protects directors or officers of companies from damage suits. These "insulating" statutes provide for various amounts of immunity to directors and officers. For example, in Indiana, a director or officer is liable for damages only if his conduct constitutes "willful misconduct or recklessness." The reported bill totally preempted State law in this area with respect to suits brought by the FDIC against bank directors or officers. However, in light of the state law implications raised by this provision, the managers' amendment scales back the scope of this preemption. Under the managers' amendment, State law would be overruled only to the extent that it forbids the FDIC to bring suit based on "gross negligence" or an "intentional tort." In determining whether or not conduct constitutes "gross negligence" or an "intentional tort," applicable State law is to govern. This amendment would thus allow the FDIC to sue a director or officer guilty of gross negligence or willful misconduct, even if State law did not allow it.

*Id.* at S4278–4279.

**6.** The new provision provided:

A director or officer of an insured financial institution may be held personally liable ... for gross negligence, or intentional conduct as those terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right, if any, of the [FDIC] that may have existed immediately prior to the enactment of the FIRREA Act.

*Id.* at S4451–52.

bring an action or direct others to bring an action against the directors and officers of a financial institution if the director or officer acted with gross negligence or committed an intentional tort.... [T]he preemption of State law permitted by this bill is limited solely to those institution[s] that have Federal deposit insurance and to those cases in which the directors or officers have committed intentional torts or acts of gross negligence. As such, the establishment of a Federal standard of care is based on the overriding Federal interest in protecting the soundness of the Federal Deposit Insurance Corporation fund and is very limited in scope.

*Id.* at S4276–4277. Senator Sanford's contemporaneous understanding of the managers' amendment as establishing a federal gross negligence standard of liability necessary to enable financial institutions to attract quality officers and directors supports our interpretation of the plain language of § 1821(k).

Moreover, the House version of FIRREA, which was passed after the Senate version, preserved the Senate's removal of the simple negligence language. H.R. 1278, 101st Cong., 1st Sess., 135 Cong.Rec. H2602 (daily edition June 15, 1989). The House version also deleted the Senate's savings clause that had protected "any right, if any, of the [FDIC] that may have existed immediately prior to the enactment of the FIRREA Act." *Id.* The House bill, as amended, emerged from the conference committee and was voted into law. *See* Pub.L. No. 101–73, 103 Stat. 183 (Aug. 9, 1989), *reprinted in* 1989 U.S.C.C.A.N. 86.

After FIRREA became law, the FDIC submitted to Congress a proposed amendment which would have reintroduced a simple negligence standard.[7] Arthur W. Leibold, *Federal Common Law: What &*

*Where?, in Civil & Criminal Liability of Officer, Directors & Professionals: Bank & Thrift Litigation in the 1990's,* 153, 161 n. 12 (Practicing Law Institute 1991). After the RTC withdrew this proposal, Congressman Richard Baker of Louisiana proposed a similar amendment to the savings clause which also would have reintroduced a simple negligence standard of liability.[8] The amendment was accepted by a subcommittee of the House Banking Committee, but was subsequently voted down by the full committee on a voice vote.

These post-enactment efforts to amend § 1821(k) to reinstate a simple negligence standard of liability belie the RTC's contention that § 1821(k), as enacted, preserved a federal common law action for simple negligence. While post-enactment legislative history is not entitled to the same weight given contemporaneous legislative history, *Cannon v. University of Chicago,* 441 U.S. 677, 686 n. 7, 99 S.Ct. 1946, 1953 n. 7, 60 L.Ed.2d 560 (1979), "we would be remiss if we ignored" the efforts to amend § 1821(k) as evidence that § 1821(k), in its current form, pre-empts federal common law actions for simple negligence. *Id.*

At best, the RTC has shown that FIRREA's legislative history can be faithfully read as sending conflicting signals, however, it does not demonstrate the kind of "clearly expressed legislative intention" necessary to trump the plain meaning of the statute. *See Kaiser Aluminum,* 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990). Moreover, we believe that the most persuasive forms of legislative history are consistent with the plain language of § 1821(k) and demonstrate that Congress intended to preempt federal common law in this area.

### Milwaukee II

Finally, the Supreme Court's decision in *Milwaukee II* requires a finding of pre-emp-

---

7. The FDIC amendment provided:
 Nothing in this subsection shall impair or affect any right of the [RTC] under other applicable state or federal law, including a right to hold such director or officer personally liable for negligence.

8. The Baker amendment provided:
 Paragraph (1) shall not be construed as impairing or affecting any right of the ... [RTC]

under any provision of applicable State or other Federal law, including any provision of common law or any law establishing the personal liability of any director or officer of an insured depository institution under any standard pursuant to such law.
H.R. 3435, 102 Cong., 1st. Sess. § 228 (Comm. Markup Oct. 18, 1991).

tion of federal common law in this case. There, the issue before the Court was whether the Federal Water Pollution Control Act Amendments of 1972 pre-empted an existing federal common law action for abatement of a nuisance caused by interstate water pollution. The court found that Congress "occupied the field through the establishment of a comprehensive regulatory program supervised by an expert administrative agency." *Id.* 451 U.S. at 317, 101 S.Ct. at 1792. These two factors, establishment of a comprehensive regulatory scheme and supervision by an expert agency are also present in this case.

FIRREA contains numerous provisions expanding federal authority over the activities of officers and directors of federally insured financial institutions. For example, FIRREA expanded the power of federal banking agencies to require officers and directors subject to a "cease and desist" order to make restitution or provide reimbursement if the officer or director was unjustly enriched by a "reckless disregard" for the law, regulations or prior regulatory orders. 12 U.S.C. § 1818(b)(6)(A). FIRREA also extended the federal banking agencies' enforcement authority over officers and directors who, through resignation or termination, have severed their relationship with a federally insured financial institution. FIRREA now provides that these officers and directors remain subject to prohibition orders and civil money damages for 6 years from the date of their resignation or termination. 12 U.S.C. § 1818(i)(3).

FIRREA also created several expert agencies to supervise and administer this comprehensive regulatory scheme. It created the position of Director of the Office of Thrift Supervision ("OTS"), and gave it supervisory and regulatory authority over federal and state savings associations and savings and loan holding companies. 12 U.S.C. § 1462a. FIRREA also established the Federal Housing Finance Board and gave it the primary duty to oversee and supervise the activities of the Federal Home Loan Banks. 12 U.S.C. § 1422a. FIRREA, of course, created the agency bringing this suit, the RTC, to help resolve failed thrift institutions. 12 U.S.C. § 1441a. Given such a comprehensive enforcement mechanism and the establishment of several expert regulatory agencies to supervise that mechanism, "there is no room to attempt to improve on that program with federal common law." *Id.* at 319, 101 S.Ct. at 1793 (citing *Texas v. Pankey,* 441 F.2d 236, 241 (10th Cir.1971)).

Based on the plain language of § 1821(k), its legislative history and the Supreme Court's decision in *Milwaukee II,* we find that Congress intended to pre-empt federal common law and establish a gross negligence standard of liability for officers and directors of failed federally chartered financial institutions. However, we stress that we do not reach the issue of whether § 1821(k)'s gross negligence standard pre-empts state law. The Supreme Court has clearly held that, because of federalism concerns, greater evidence of congressional intent is required to pre-empt state law than federal common law:

> Contrary to the suggestions of respondents, the appropriate analysis in determining if federal statutory law governs a question previously the subject of federal common law is not the same as that employed in deciding if federal law pre-empts state law. In considering the latter question "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." While we have not hesitated to find pre-emption of state law, whether express or implied, when Congress has so indicated, or when enforcement of state regulations would impair "federal superintendence of the field," our analysis has included "due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy." Such concerns are not implicated in the same fashion when the question is whether federal statutory or federal common law governs, and accordingly the same sort of evidence of clear and manifest purpose is not required. Indeed, as noted in cases such as the present, "we start with the assumption" that it is for Congress, not federal courts, to articulate the standards to be applied as a matter of federal law.

*Id.* 451 U.S. at 316–317, 101 S.Ct. at 1792 (citations omitted). Thus, our holding in this case does not necessarily dictate a finding that § 1821(k) pre-empts state law, if and when that case reaches this court.

### Conclusion

For the foregoing reasons we answer in the affirmative the question presented for our review: whether § 1821(k) "pre-empted federal common law and created a cause of action solely for gross negligence."