Lucinda **HOLLOWAY**, Plaintiff,

v.

**Lloyd M. BENTSEN, Secretary of the Treasury of the United States, individually and officially, George Rezny, individually and officially, Norma Wells, individually and officially, William Hawkins, individually and officially, Jack Harris, individually and officially, William Gofus, individually and officially, William Jacobs, individually and officially and the Internal Revenue Service, Defendants.**

No. 2:94 CV 98 JM.

United States District Court,
N.D. Indiana,
Hammond Division.

Nov. 21, 1994.

Monica S. Morris, King and Meyer, Gary, IN, for Lucinda Holloway.

Orest S. Szewciw, Carol A. Davilo, U.S. Attys. Office, Dyer, IN, for Lloyd M. Bentsen.

Orest S. Szewciw, U.S. Attys. Office, Dyer, IN, for George Rezny, Norma Wells, William Hawkins, Jack Harris, William Gofus, William M. Jacobs and I.R.S.

## ORDER

MOODY, District Judge.

The defendants in this case have filed a motion to dismiss Lucinda Holloway's complaint for failure to state a claim. See Fed. R.Civ.P. 12(b)(6). Holloway is a former criminal investigator for the Internal Revenue Service. She has sued the Secretary of the Treasury and other Department of Treasury employees, in both their official and individual capacities, for discrimination she allegedly suffered on the job. Holloway alleges that she was given an unfairly negative performance review, passed over for promotion, and denied a wage increase all because of her race and gender. She further alleges that she was fired when she complained about this treatment. For the reasons given below, the court concludes that Holloway's complaint fails to state a claim, except against Lloyd Bentsen in his capacity as Secretary of the Treasury. The defendants' motion is **GRANTED.**

### I.

A Rule 12(b)(6) motion attacks the sufficiency of a complaint. *Resolution Trust Corp. v. O'Bear, Overholser, Smith, & Huffer,* 840 F.Supp. 1270, 1274 (N.D.Ind.1993). Accordingly, discussion of a Rule 12(b)(6) motion begins with the challenged complaint's allegations. *Id.* These allegations are construed "liberally," and "in the light most favorable to the plaintiff." *Id.* No count of a complaint should be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief.' " *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The flipside is that if it is clear, even construing the allegations of the complaint in the plaintiffs' favor, that the law provides no relief, then dismissal is appropriate.[1]

### II.

Holloway's complaint alleges as follows: Holloway, an African–American woman, was an IRS criminal investigator for fifteen years. The criminal investigations division of the IRS ["CID"] is predominately white and male. In October, 1986, Holloway was transferred to CID's Merrillville, IN office. It was there that her troubles began.

Holloway's supervisors in Merrillville were Adolph Anselmo, George Rezny and Robert Gofus, all white males. Anselmo, her direct supervisor, gave Holloway a positive performance review in 1989. In 1990, Paul Seamon took over Anselmo's responsibilities, including Holloway's evaluation. Being unfamiliar with Holloway's work, Seamon agreed that Holloway should draft a self-appraisal for 1990, which he and Rezny would then consider and finalize. Holloway ultimately received a positive 1990 performance review, but not so positive as her 1989 review. Moreover, the 1990 review was less favorable than that given to "similarly situated" white males. Holloway complained about the review to Gofus, who was chief of CID; Gofus refused to amend the review's conclusions.

Subsequently, in October, 1990, Holloway applied for positions in both the Merrillville and Indianapolis offices of CID. Both posi-

---

1. Holloway suggests that because the defendants have attached exhibits to their motion, the motion should be treated as one for summary judgment. Rule 12(b)(6) does provides that "[i]f . . . matters outside the pleading are presented to and not excluded by the court, [a] motion [under Rule 12(b)(6)] shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ P. 12(b). Because the defendants' exhibits are irrelevant to the disposition of their motion, the court does exclude those exhibits. Accordingly, the motion is treated under the Rule 12(b)(6) rubric.

tions would have constituted promotions for Holloway and she was qualified for both jobs. Gofus refused to recommend Holloway for either position. Holloway subsequently filed complaints with the Equal Employment Opportunity Commission ["EEOC"] regarding her 1990 performance review and the IRS' refusal to grant her the promotions for which she had applied.

While she awaited an administrative decision on her EEOC charge, in October, 1993, Norma Wells denied Holloway her annual within-grade wage increase. Wells' decision was upheld by Jack Harris, branch chief of CID. Shortly thereafter, in December, 1993, the EEOC did issue its recommended decision on Holloway's administrative charge. The EEOC recommended a finding that Holloway had suffered discrimination on the basis of race and sex when she received her 1990 performance review. Despite that recommendation, in February, 1994 the Department of Treasury's final decision found no discrimination in Holloway's case. The Department also finalized the decision to deny Holloway the promotions she had sought in 1990. Later that same month, Wells and William Hawkins, chief of CID, initiated the process that led to Holloway being fired in March, 1994 due to unacceptable job performance. William Jacobs, district director for the IRS, approved Holloway's termination.

Holloway appealed her termination to the Merit Protection Board, claiming that she was fired in retaliation for having filed her charge with the EEOC. That appeal is pending. Now, citing 42 U.S.C. §§ 2000e–16(c), 2000e–3 & 2000e–5 and 42 U.S.C. § 1981, Holloway seeks reinstatement, back pay and compensatory damages.

### III.

Distilled to its essentials, the defendants' attack on Holloway's complaint is on three fronts: (1) that only the head of a federal department or agency can be sued under Title VII of the Civil Rights Act of 1964, as amended (i.e., 42 U.S.C. §§ 2000e–16(c), 2000e–3 & 2000e–5 in this case); (2) that such a Title VII action is the exclusive remedy for a federal employee alleging discriminatory employment practices; and, (3) that

Holloway has not exhausted her Title VII administrative remedies with regard to all of her claims. Defendants have the better argument on each of these fronts.

### A.

■ Title VII is clear that the head of the relevant federal department or agency is the only appropriate plaintiff in a Title VII action brought by a federal employee. See 42 U.S.C. § 2000e–16(c) (in employment discrimination suit against federal government, "the head of the department, agency, or unit, as appropriate, shall be the defendant."); see also Ellis v. United States Postal Service, 784 F.2d 835, 838 (7th Cir.1986) ("It is well-settled in this circuit that, in a Title VII action alleging discrimination in [a federal agency] ..., the only proper defendant is the head of the agency.") Here, Secretary Bentsen is the head of the appropriate government department, i.e., the Department of the Treasury, of which the IRS is part. Accordingly, the only appropriate Title VII defendant is Secretary Bentsen in his official capacity. Holloway fails to state a claim under Title VII against the remaining defendants.

### B.

■ In fact, because Title VII is a federal employee's exclusive avenue for relief from allegedly discriminatory employment practices, Holloway fails to state a claim against the remaining defendants under any legal theory. The point was settled when the Supreme Court held that a federal employee could not sue a government agency for employment discrimination under both Title VII and § 1981. See Brown v. General Services Admin., 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). Holloway does not refute that Brown so held; instead, she argues that Brown does not foreclose her employment discrimination suit under § 1981 against her supervisors, including Secretary Bentsen, in their individual capacities.

Prior to 1972, federal employees were excluded from protection under Title VII. Brown, 425 U.S. at 825, 96 S.Ct. at 1964. In 1972, Congress added 42 U.S.C. § 2000e–16, which proscribes "any discrimination based

on race, color, religion, sex, or national origin" in federal employment. 42 U.S.C. § 2000e–16(a). The new section provides for a complex administrative procedure in the event such discrimination is charged, *see* § 2000e–16(b); it also provides for suit in district court should that administrative procedure prove unavailing, *see* § 2000e–16(c). *Brown* held that the meticulous procedure outlined in § 2000e–16 is "inconsistent with the ... contention that the judicial remedy afforded [there] was designed merely to supplement other putative judicial relief." 425 U.S. at 832, 96 S.Ct. at 1968. The section's "rigorous administrative exhaustion requirements and time limitations would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible." *Id.* at 833, 96 S.Ct. at 1968. The Court concluded that "[i]t would require the suspension of disbelief" to think that Congress would have allowed such devaluation of the statute's administrative procedures.

Although it is true that *Brown* did not explicitly address whether § 1981 claims against federal supervisors in their individual capacities were precluded by § 2000e–16, the Court's rationale applies equally to such cases. Certainly, there is no hint in the statute, or otherwise, that Congress intended for purportedly discriminated-against federal employees to have access to court under § 1981 without first complying with the administrative remedies required by § 2000e–16. Indeed, the cases suggest that just the opposite is so.

For example, in *McGuinness v. United States Postal Service* the Seventh Circuit took up the case of a Postal Service job applicant who was rejected because of his "flat feet and hammer toes." 744 F.2d 1318, 1319 (7th Cir.1984). McGuinness sued the Postal Service and two Postal Service workers under the Rehabilitation Act. *Id.* The Rehabilitation Act grants Title VII remedies to federal employees or job applicants discriminated against on the basis of physical disability. *Id.* at 1319–20. Concluding that McGuinness had not exhausted his administrative remedies, the Seventh Circuit held that "[i]t makes no difference that McGuin-

ness sued two officials of the Postal Service as well as the Service itself." *Id.* at 1322. "McGuinness," the court went on, "could not avoid having to exhaust his administrative remedies by bringing suit, whether under section 505 [of the Rehabilitation Act] or any other statute, against individual officials." *Id.* (Emphasis added.) Other courts faced with like situations have come to the same conclusion. *See, e.g., Hampton v. Internal Revenue Service,* 913 F.2d 180, 183 (5th Cir. 1990) ("Hampton cannot circumvent the administrative exhaustion requirement by suing his supervisor individually in tort."); *White v. General Services Admin.,* 652 F.2d 913, 916–917 (9th Cir.1981) ("[A]llowing additional individual remedies would interfere with that carefully devised scheme [set out in § 2000e–16] by permitting circumvention of administrative remedies."); *Gissen v. Tackman,* 537 F.2d 784, 786 (3d Cir.1976) (former federal government employee could not recover against former supervisors, in their official and individual capacities, because employee "failed to seek any administrative relief before filing his complaint").

Neither would it help Holloway to argue that there is no concern with disincentives for exhaustion here because she did first turn to, and exhaust, § 2000e–16's administrative procedures. Putting aside for a moment the question of whether she, in fact, exhausted her administrative remedies (a point taken up below), to allow Holloway to proceed under § 1981 based on this argument would be to graft an administrative exhaustion requirement onto § 1981, though only for employment discrimination cases against individual federal supervisors. The result would be a sort of springing § 1981 cause of action, which would emerge only after § 2000e–16 exhaustion, and then only with regard to supervisors in their individual capacities. Notwithstanding its convolution of the law, *see Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir.1989) (stating preference for "a general rule" in fashioning requirements for employment discrimination cases), such a judicially created cause of action would be entirely redundant.

Put another way, a § 1981–employment discrimination cause of action would protect

no interest of federal employees other than the interests protected by § 2000e–16. That section, as discussed, protects federal employees from discrimination in the work place. Section 1981 protects the rights of all citizens to contract.[2] Here, the only contract is Holloway's federal employment contract and those alleged to have interfered with that contract are Holloway's fellow employees, assigned to supervise and evaluate her. Holloway's supervisor's acts of alleged discrimination—the poor performance appraisals, the refused promotions, the denial of her within-grade wage increase, even the retaliatory discharge—are all acts taken in the scope of their employment. To the extent these acts were done with race- or gender-based animus, they give rise to precisely the types of grievances for which Congress created § 2000e–16. *See* 42 U.S.C. § 2000e–16(a). This redundancy argues against recognition of a hybrid § 1981–employment discrimination action for federal employees.

Further support for prohibiting Holloway from proceeding against the individual defendants under § 1981 is had in the limited cases that have allowed federal employees to proceed against both the head of their department or agency under Title VII and against their supervisors individually under some other theory. These cases construe Title VII not to preclude separate remedies for harm suffered from actions other than the discrimination barred by Title VII. *See, e.g., Ethnic Employees of the Library of Congress v. Boorstin,* 751 F.2d 1405, 1414–16 (D.C.Cir.1985) (allowing federal employees to sue their employers "for constitutional violations against which Title VII provides no protection at all"); *White,* 652 F.2d at 917 (Title VII precludes only remedies for "discrimination based on race, sex, religion or national origin.") A good example is *Stewart v. Thomas,* where the plaintiff sued the Director of the EEOC under Title VII and her direct supervisor individually under common-law tort theories. 538 F.Supp. 891, 895

(D.D.C.1982). The court sanctioned the suit on the ground that the plaintiff "bases her claims against the EEOC and [the supervisor] on two distinct and independent rights: her right to be free from discriminatory treatment at her jobsite and her right to be free from bodily or emotional injury caused by another person." *Id.* No such independent rights exist in a case such as Holloway's: her claims are—at the beginning, middle, and end—claims of employment discrimination. It is no use to dress those claims up as anything else. Compare *Rochon v. Dillon,* 713 F.Supp. 1167, 1173 (N.D.Ill.1989) (FBI agent's § 1981 claim against individual supervisors who harassed him because of his race dismissed "because the only contract involved is [the plaintiff's] employment contract, [and] such a claim would be preempted by Title VII"). If *Stewart, Boorstin,* and *White* hold that suits against individual federal supervisors may proceed to vindicate rights distinct from those protected by § 2000e–16, then, by negative implication, as *Rochon* seems to acknowledge, such suits may not proceed to vindicate rights that are protected by that section. Holloway's lawsuit is of the latter variety.

Accordingly, the court holds that a federal employee can not, as a matter of law, proceed with an employment discrimination complaint under § 1981 against other federal employees in their individual capacities. Holloway must sink or swim with her Title VII claim against Secretary Bentsen in his official capacity.

### C.

The extent to which Holloway may proceed under Title VII depends on her exhaustion of the administrative remedies set out at § 2000e–16(b). Exhaustion of administrative remedies, while not jurisdictional, is prerequisite to bringing suit in district court. *See* 42 U.S.C. § 2000e–16(c); *Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th

---

**2.** Section 1981(a) reads, in part:
**(a) Statement of equal rights.** All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... and to the full and equal benefit of all laws and

proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Cir.1994) (clarifying non-jurisdictional quality of prerequisite). Holloway has exhausted her administrative remedies for some, but not all, of the discriminatory acts she alleges.

To be clear, the defendants do not dispute that Holloway exhausted her administrative remedies concerning the 1990 performance review and the promotions she was denied that year. The defendants do maintain that Holloway failed to exhaust her administrative remedies concerning both the denial of her within-grade wage increase in 1993 and the Department's termination of her employment. Holloway herself does not allege that she pursued administrative remedies concerning the denial of her wage increase; she does allege that she filed an administrative appeal concerning her termination, which appeal is still pending. In response to the current motion, Holloway makes no argument in favor of finding or excusing exhaustion of her administrative remedies. Instead, she relies on her invocation of § 1981 to argue that she did not have to pursue her administrative options. As discussed above, Holloway does not state a claim under § 1981. Accordingly, Holloway's failure to fully exhaust her administrative remedies is fatal to her stating a claim under Title VII vis-a-vis the denial of her within-grade wage increase and her termination.

 This is true despite the fact that an argument could have been made that, regarding her retaliatory discharge claim, no administrative proceeding was required. The Seventh Circuit has held that "a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge." *Malhotra*, 885 F.2d at 1312. However, the Seventh Circuit has also held that "administrative remedies, once initiated, must be exhausted before a suit may be filed." *McGinty v. United States Dept. of the Army*, 900 F.2d 1114, 1117 (7th Cir.1990). In *McGinty*, a case under the analogous Age Discrimination in Employment Act, the complainant had not been required to file his administrative charge before filing in district court. *Id.* at 1116–17. The court nonetheless concluded that he must finish what he had started, relying on the rationale that

'[a]llowing a plaintiff to abandon the administrative remedies he [or she] has initiated would tend to frustrate the ability of the agency to deal with complaints. All participants would know that at any moment an impatient claimant could take his claim to court and abort the administrative proceedings. Moreover, such a course would unnecessarily burden courts with cases that otherwise might be terminated successfully by mediation and conciliation.' *Id.* at 1117 (citation omitted). This rationale has equal application here: Holloway cannot now bring to district court the partly masticated claim she chose to present first to the Merit Protection Board.

*Conclusion*

The defendants' motion to dismiss is **GRANTED.** Holloway fails to state a claim against the individual defendants. She fails to state a claim against the Internal Revenue Service. What remains is her Title VII claim against Secretary Bentsen, in his official capacity, alleging that her 1990 performance review and the promotions she was denied in that year were the result of race- and gender-based discrimination.

**SO ORDERED.**